Morris Miller v. Commissioner.
Miller v. Commissioner
Docket No. 43633.
United States Tax Court
T.C. Memo 1955-112; 1955 Tax Ct. Memo LEXIS 231; 14 T.C.M. (CCH) 398; T.C.M. (RIA) 55112; April 29, 1955
*231 1. The Commissioner has determined deficiencies in petitioner's income tax for the years 1943, 1944, 1945, 1946, and 1947. The Commissioner determined that petitioner kept no adequate books and records which would make possible the computation of his net income by that method. In his determination of the deficiencies he used the bank deposit method. Held, under the circumstances the Commissioner's method is approved. Held, further, his computation of petitioner's net income for 1947 is approved and his computation of petitioner's net income for the other taxable years is approved except as to certain adjustments which must be made thereto to correctly reflect petitioner's net income for those taxable years and bring them in line with the method used by the Commissioner for 1947. 2. Held, that no part of the deficiencies for 1943, 1944, 1945, 1946 or 1947 is due to fraud with intent to evade tax. 3. Tax returns were filed in the name of petitioner for all the taxable years. Petitioner signed all the returns himself except those for 1943, 1945 and 1947. Petitioner's name was signed to each of these latter named returns but it was not done by petitioner himself. The returns were *232 signed in the name of petitioner by his wife whom he had orally authorized and directed to sign his name. No power of attorney was given to petitioner's wife to sign the returns. Petitioner was not ill and he was not out of the United States so as to prevent his signing his name in person. The Commissioner has determined that the returns for 1943, 1945, and 1947 were the same as no returns and has imposed delinquency penalties under section 291(a), Internal Revenue Code of 1939. Held, the returns for 1943, 1945, and 1947 were not returns within the meaning of section 51(a), Internal Revenue Code of 1939 and Treasury regulations pertaining thereto, and the Commissioner is sustained in his imposition of delinquency penalties under section 291(a) of the 1939 Code. 4. The Commissioner has imposed penalties for taxable years 1945, 1946, and 1947 under section 294(d)(2) of the 1939 Code for substantial underestimation of estimated tax. Held, petitioner did substantially underestimate his tax in the estimates which he filed for those years and the Commissioner is sustained in imposing penalties under section 294(d)(2). Such penalties for 1945, 1946, and 1947 will be recomputed under Rule *233 50 to accord with the holding herein as to petitioner's net income for those years. Hal Lindsay, Esq., 824-8 Healy Building, Atlanta, Ga., for the petitioner. James R. Harper, Jr., Esq., for the respondent. BLACK *234 Memorandum Findings of Fact and Opinion This proceeding involves deficiencies and penalties which the Commissioner has determined against petitioner, as follows: Penalties
Year
Income Tax
50 Per Cent
Other
1943
$ 5,442.55 *
$ 3,164.84
$1,135.86
1944
19,389.69
9,694.85
1945
17,477.17
10,893.47
6,600.20
1946
15,684.63
9,440.15
1,190.80
1947
1,433.51
1,616.68
707.84
*235 A summary of what the Commissioner has done in the determination of the deficiencies and penalties for the year 1943 will suffice to illustrate the methods used in his determinations for the other taxable years. To the net income reported by petitioner on his return for 1943, the Commissioner has added "(a) Unreported income $13,836.56." This adjustment has been explained in the deficiency notice as follows: "(a) It has been determined that you realized taxable income of $13,836.56 during the year 1943 which was not reported on your 1943 return. Your income has been increased accordingly. Section 22(a) of the Internal Revenue Code." The Commissioner also imposed 50 per cent fraud penalties under section 293(b), Internal Revenue Code of 1939, and, for some of the years, 25 per cent delinquency penalties under section 291(a), and penalties for underestimation of income under section 294(d)(2) of the 1939 Code. Petitioner assigns error as to the determination of the Commissioner in each of the taxable years with respect to the deficiencies in income tax and also the penalties imposed. Petitioner denies that any part of the *236 deficiencies is due to fraud with intent to evade tax and also denies that he was delinquent in the filing of his return for any of the taxable years. Petitioner, at the hearing, conceded there would be some deficiency in each of the taxable years due to the discovery of a bank account subsequent to the filing of the petition. Petitioner denies, however, that any penalties should be imposed. Findings of Fact A considerable part of the documentary facts was stipulated and these facts are found as stipulated and are embodied herein by this reference. During the calendar years 1943 to 1947, inclusive, petitioner Morris Miller was an individual engaged in the operation of a beer parlor, lunch counter and pool hall known as the Marietta Buffet in Atlanta, Georgia. During these years petitioner was married to, and living with, Dora G. Miller with legal residence in Atlanta. Dora G. Miller filed no separate tax returns for the years 1943 through 1947. Petitioner filed timely individual income tax returns, Form 1040, with the collector of internal revenue for the district of Georgia, for each of the taxable years 1944 and 1946. On March 14, 1944, an individual income and victory *237 tax return, Form 1040, for the calendar year 1943, was filed with the collector of internal revenue for the district of Georgia bearing the caption "Morris Miller." The petitioner did not sign the return, but the signature line of the return does bear the inscription "Morris Miller By Mrs. M. Miller." This inscription was affixed by petitioner's wife upon the oral authorization and direction of petitioner. On March 15, 1946, an individual income tax return, Form 1040, for the calendar year 1945 was filed with the collector of internal revenue for the district of Georgia bearing the caption "Morris Miller." The petitioner did not sign the tax return, but the signature line of the return does bear the inscription "Morris Miller." This inscription was affixed by the petitioner's wife upon the oral authorization and direction of petitioner. On March 15, 1948, an individual income tax return, Form 1040, for the calendar year 1947 was filed with the collector of internal revenue for the district of Georgia bearing the caption "Morris Miller." The petitioner did not sign the tax return, but the signature line of the return does bear the inscription "Morris Miller By D. G. Miller." This *238 inscription was affixed by the petitioner's wife upon the oral authorization and direction of petitioner. Morris Miller was not physically incapacitated during the years 1943 to 1947, inclusive, and he was not outside the continental limits of the United States during any of these years. Dora G. Miller did not have a power of attorney from the petitioner to sign any of his tax returns for him. The examination of the income tax returns of petitioner by the internal revenue service for the taxable years 1943 through 1947, began upon a routine investigation by John P. Kanes, a revenue agent. The agent asked petitioner for the books and records and was told that they were in the possession of his accountant Joe Weinman and Company, but when the agent went to the accountant for the books they were not there. The agent returned to the petitioner's place of business and the petitioner told the agent that the books and records had been destroyed as it was not thought necessary to keep them any longer. The agent then began an analysis of all of petitioner's financial affairs from third party records. The revenue agent made his computation of income upon the bank deposits basis because frequent *239 regular deposits, at least weekly, were made in the bank accounts and the agent concluded there was a direct relationship between the deposits and the petitioner's income. The agent rejected the idea of computing petitioner's net income on the net worth method because he was unable to procure sufficient information, which he regarded as trustworthy, to enable him to compute petitioner's beginning net worth on January 1, 1943. Shortly after revenue agent Kanes' examination began, a certified public accountant named George Carraway was employed by petitioner to make a computation of income for petitioner for each of the taxable years. Carraway received a very large number of invoices and some books and records from petitioner but he regarded these as wholly inadequate from which to compute petitioner's net income for the taxable years. He decided he would use a computation of income upon the net worth basis. In order to do this it was necessary for him to secure information as to petitioner's net worth at the beginning of the taxable period, to wit, January 1, 1943. This information he procured from petitioner. In a computation of petitioner's assets on hand January 1, 1943, Carraway *240 used a figure of cash on hand, $25,000. This figure was procured from petitioner upon his representation to Carraway that he had $25,000 on hand January 1, 1943, which he kept in currency in his safe. Carraway did not verify this claim from any other source but accepted it as true from petitioner's statement. By accepting petitioner's statement that he had on hand $25,000 in currency January 1, 1943, Carraway arrived at a figure of $31,353.57 as petitioner's net worth January 1, 1943. In 1949, petitioner filed amended returns for all years upon the basis of his accountant's net worth statements. During each of the calendar years 1943 through 1947, petitioner reported total income in his original returns in amounts as set forth in the following schedule which also sets out, by way of comparison, the United States savings bond purchases by petitioner and his wife in each of those years: Total Income
Savings Bonds
Year
Reported
Purchased
1943
$4,514.93
$ 6,250.00
1944
4,346.86
7,018.75
1945
4,960.20
9,000.00
1946
6,789.13
18,000.00
1947
5,762.61
7,000.00
The amended returns filed by petitioner in 1949, after his accountant had computed his *241 income by use of the net worth method, showed net income as follows: Year
Net Income
1943
$ 7,159.33
1944
8,684.53
1945
14,662.54
1946
16,093.68
1947
9,281.88
The following table shows the gross receipts which petitioner reported on his return for the respective taxable years and petitioner's gross bank deposits for the respective taxable years: Total Receipts
Gross Bank
Year
- Per Return
Deposits
1943
$39,950.63
$19,608.30
1944
53,345.33
46,455.93
1945
54,882.07
55,363.57
1946
61,696.55
71,946.33
1947
73,539.89
63,073.43
A comparison of the net income as reported by petitioner for each of these years on his original returns and as computed by his accountant in an exhibit filed at the hearing, Exhibit 39, is set forth in the following schedule: Net Income
Petitioner's Net
Reported on
Worth Computa-
Year
Original Returns
tion of Income
1943
$4,514.93
$ 6,525.41
1944
4,346.86
10,989.54
1945
4,960.20
17,695.13
1946
6,289.13
19,609.58
1947
5,262.61
10,799.82
Respondent, at the hearing, filed a computation of net income on the bank deposit method for each of the taxable years. *242 This computation showed a less amount of net income than the Commissioner had determined in his deficiency notice and is as follows: Year
Net Income
1943
$17,094.08
1944
36,264.15
1945
37,009.08
1946
42,347.35
1947
13,008.20
In 1947, the only year before the Court for which canceled checks were available, petitioner issued checks for deductible expenses and purchase of goods of the Marietta Buffet totaling $8,228.76. This amount was allowed in the respondent's computation of income on the bank deposits basis as a reduction of income and included all payments made by check for the purchase of goods. The payments made by check for business expenses and purchase of goods of the Marietta Buffet in 1947 provide a pattern which is identical to the expenditures by check in the years 1943 through 1947. The respondent's computation of net income made no allowance for payments made by check in any other year except 1947, because no canceled checks or invoices were made available to the agent for the years 1943 to 1946, inclusive. No books or records being available sufficient to enable the Commissioner to compute petitioner's net income for the respective taxable *243 years by the use of books and records, the Commissioner was justified in computing petitioner's net income on the bank deposit method which he used in the determination of the deficiencies. Petitioner's net income for each of the taxable years, by use of the bank deposit method and by giving effect in the years 1943, 1944, 1945, and 1946 to allowances for payments made by check in the payment of expenses and the purchase of goods, as the Commissioner did in 1947, is as follows: Year
Net Income
1943
$13,172.42
1944
26,972.97
1945
25,936.47
1946
27,958.09
1947
13,508.20
The foregoing findings as to petitioner's net income for each of the taxable years are not in addition to the net income reported on the returns filed by petitioner, original and amended, but are meant to represent petitioner's net income in each of the taxable years and should be used as petitioner's net income in a recomputation under Rule 50. In giving effect, in the years 1943, 1944, 1945, and 1946, in arriving at petitioner's net income for those years, to allowances for payments made by check in the payment of expenses and the purchase of goods, as the Commissioner did for 1947, *244 we have made the best approximation we could under all the evidence, no complete invoices and canceled checks being available for those years. We have not disturbed the Commissioner's computation of petitioner's net income for 1947. A complete file of canceled checks and invoices for that year was available to the Commissioner. He used them and we are not convinced that he made any error in his computation for 1947 as made in his Exhibit DD filed at the hearing. In fact, we do not understand that petitioner seriously questions the correctness of respondent's computation of his net income for the year 1947. A summary of the payments of income tax on estimated tax returns and on the individual income tax returns, Forms 1040, during the years 1943 to 1947, inclusive, are set forth in the following schedule: Applicable
Amount of
Date of Payment
Tax Year
Payment
Nature of Payment
Payments in 1943
9/21/43
1943
$ 357.62
Estimate of 1943 Tax
12/15/43
1943
1,072.86
Estimate of 1943 Tax
Payments in 1944
4/14/44
1944
127.02
Estimate of 1944 Tax
6/17/44
1944
127.02
Estimate of 1944 Tax
9/20/44
1944
127.02
Estimate of 1944 Tax
Payments in 1945
1/23/45
1944
498.72
Estimate of 1944 Tax
3/16/45
1945
78.56
Estimate of 1945 Tax
6/20/45
1945
78.56
Estimate of 1945 Tax
9/17/45
1945
78.56
Estimate of 1945 Tax
Payments in 1946
1/25/46
1945
78.54
Estimate of 1945 Tax
3/20/46
1945
348.00
Payment on what purports
to be a 1945 tax return of
Morris Miller
3/18/46
1946
50.00
Estimate of 1946 Tax
6/18/46
1946
50.00
Estimate of 1946 Tax
9/17/46
1946
50.00
Estimate of 1946 Tax
Payments in 1947
2/ 6/47
1946
966.41
Paid with 1946 Return
4/10/47
1947
50.00
Estimate of 1947 Tax
6/19/47
1947
50.00
Estimate of 1947 Tax
9/22/47
1947
50.00
Estimate of 1947 Tax
Payments in 1948
1/28/48
1947
800.00
Estimate of 1947 Tax
*245 On February 8, 1945, petitioner received a refund of 1943 tax paid and interest in the amounts of $827.98 and $43.42, respectively. The tax refund and interest were received as a single payment of $871.40. On June 14, 1945, petitioner received a refund of 1944 tax paid and interest in the amounts of $181.78 and $2.52, respectively. The tax refund and interest were received as a single payment of $184.30. No part of the deficiencies for 1943, 1944, 1945, 1946, and 1947 is due to fraud with intent to evade tax. Opinion BLACK, Judge: The pleadings raise the following issues for us to decide: 1. Did the petitioner have unreported income for each of the years 1943 through 1947 as determined by the respondent on the bank deposits basis? 2. Is the petitioner liable for the fraud penalty for each of the years 1943 through 1947, or any of them? 3. Is the petitioner liable for the delinquency penalty provided in section 291(a) of the 1939 Code for the years 1943, 1945, and 1947, by reason of the fact that petitioner's wife signed his name to the tax returns filed for each of those years and had no power of attorney authorizing her to do so? 4. Is the petitioner liable for the *246 penalty provided in section 294(d)(2) of the 1939 Code for substantial underestimation of tax for each of the years 1945, 1946, and 1947? We shall take up these issues in their order. Issue No. 1 Understatement of Income Petitioner strongly contends that in the determination of the deficiencies the Commissioner should not have used the bank deposit method but should have used the increase in net worth method. Petitioner concedes that the books and records which he was able to submit to the revenue agent for all of the taxable years in question, except 1947, were wholly inadequate to enable the agent to compute his net income by books and records. He contends, however, that respondent in his use of the bank deposit method has greatly inflated petitioner's net income for all of the years in question, except the year 1947. Petitioner concedes that the Commissioner has reached about the same figure of net income for 1947 as he has reached in his use of the increase in net worth method. Section 41 of the 1939 Code provides generally that the determination of income shall be upon the basis of the method of accounting regularly employed in keeping the books, but where the method *247 employed does not reflect income or where proper records are not kept or are lost "the computation shall be in accordance with such method as in the opinion of the Commissioner does clearly reflect income." Louis Halle (1946), 7 T.C. 245, 250, affd. (C.A. 2, 1949) 175 Fed. (2d) 500, certiorari denied 338 U.S. 949. The choice as to which method of computation of income shall be applied in a situation such as this, wherein no books are produced or inaccurate books have been kept, rests not with the petitioner but with the respondent. Since it is the Commissioner who is given the choice of method by which income is to be computed where no adequate books and records are kept, we should concern ourselves initially in this case with respondent's computation of income on the bank deposits basis. After a careful consideration of all the facts, both those which are stipulated and those which are brought out by oral testimony and numerous exhibits introduced at the hearing, we are unable to agree with the views argued by petitioner that the Commissioner should have used the net worth method and if he had done so he would have arrived at a more accurate *248 determination of petitioner's net income. In the first place, it is, of course, necessary in the use of the net worth method to know what assets the taxpayer had on hand at the beginning of the taxable period which is in question, namely, January 1, 1943. Petitioner claims that, in addition to the comparatively small amount of bank deposits and other assets on hand in his business, he had $25,000 in currency which he kept in a small safe in his place of business. He claimed he had this $25,000 in currency for several years. Respondent's revenue agent refused to accept this claim as true that petitioner had on hand this $25,000 in currency in his safe on January 1, 1943, because it had not been substantiated. The evidence which petitioner submitted at the hearing in this proceeding that he had on hand January 1, 1943, $25,000 in currency in his safe is far from convincing. The evidence shows that petitioner bought out his partner, Harold Sherman, for $500 in 1941. On the same day of the purchase, or the day after, petitioner borrowed $1,000 from Southern Discount Company and pledged all the property of the Marietta Buffet as collateral. Petitioner agreed to repay this loan in 12 notes *249 of $94.20 each. The loan called for interest of one per cent per month. Petitioner purchased a Chevrolet automobile in 1943 and paid for the car in part by notes. It does not seem reasonable that if petitioner had $25,000 in currency in his safe during these terms he would have entered into the above transactions on credit. Because of these facts and other facts in the record we reject petitioner's claim that at the beginning of the taxable period, January 1, 1943, he had on hand $25,000 in currency. His net worth basis computed with this as one of the important factors must, therefore, be rejected. When the claim of having on hand $25,000 in currency January 1, 1943, falls, his whole net worth computation falls. We think, however, that respondent's use of the bank deposit method must have one important adjustment made to it for each of the years 1943, 1944, 1945, and 1946. Respondent's agent Kanes testified that in the net income computation which he made by use of the bank deposit method for all the taxable years in question and which was introduced in evidence by respondent as Exhibit DD, that in computing income for 1947 he allowed petitioner a deduction of $8,228.76 for expenses *250 and merchandise purchased by check. He testified that this allowance was possible and proper because he had available all of the canceled checks for 1947. He testified that he made no such adjustment for the other taxable years because there was not made available to him the canceled checks for those other years. It seems clear to us from the evidence that petitioner made similar expenditures by check in those others years, just as he did in 1947, and that similar allowances should be made in those years. These allowances cannot be made with exactness because the canceled checks are not available and must necessarily be, to some extent, approximations but we think we should make them and have done so in our findings as to the amount of petitioner's net income for each of the years 1943, 1944, 1945, and 1946. Cohan v. Commissioner, 39 Fed. (2d) 540. We have made no change in respondent's computation of petitioner's net income for the year 1947. We do not think petitioner has proved any error in respondent's computation for that year. Issue No. 2 Fraud We next consider whether the deficiencies in petitioner's income tax for each of the taxable years were due in whole *251 or in part to fraud with intent to evade the tax. The burden of proving fraud rests upon respondent and the evidence necessary to discharge that burden must be clear and convincing. Snell Isle, Inc. v. Commissioner, (C.A. 5) 90 Fed. (2d) 481, certiorari denied 302 U.S. 734; Wiseley v. Commissioner, (C.A. 6) 185 Fed. (2d) 263. Although petitioner filed in each of the taxable years returns which were clearly erroneous in the reporting of the income from the business which he was operating, the Marietta Buffet, we are not convinced that his erroneous reporting of income was due to fraud with intent to evade tax. Certainly he seemed to have been very negligent in keeping proper books and records to show his correct income. Far better records should have been kept. But negligence, however great, is not equivalent to fraud. Mitchell v. Commissioner, 118 Fed. (2d) 308. In this Mitchell case the Fifth Circuit held that fraud means actual intentional wrongdoing and the intent required is the specific purpose to evade a tax believed to be owing. Mere negligence, whether slight or great, is not the equivalent of fraud. See also our decision *252 on remand in William E. Mitchell, 45 B.T.A. 822. We do not think that respondent has proved by clear and convincing evidence that petitioner's returns for 1943, 1944, 1945, 1946, and 1947 were fraudulent with intent to evade tax. We decide the fraud issue in favor of petitioner. Issue No. 3 Delinquency Penalties The Forms 1040 which were filed in the name of Morris Miller for each of the taxable years 1943, 1945, and 1947 did not bear the signature of petitioner. They were signed by petitioner's wife, Dora G. Miller, who acted without any power of attorney. Respondent has imposed the delinquency penalties for the years 1943, 1945, and 1947 because petitioner himself did not sign the returns and his wife, who signed the returns for petitioner, had no power of attorney which authorized her to sign for petitioner. Respondent relies on section 291 of the 1939 Code which reads as follows: "SEC. 291. FAILURE TO FILE RETURN. "(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due *253 to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * *" Respondent relies further on his Regulations 111, which reads as follows: "Sec. 29.51-2. Form of Return. - (a) Taxable years beginning before January 1, 1944. - * * * The return may be made by an agent if, by reason of illness, the person liable for the making of the return is unable to make it. The return may also be made by an agent if the taxpayer is unable to make the return by reason of continuous absence from the United States for a period of at least 60 days prior to the date prescribed by law for making the return. Whenever a return is made by an agent it must be accompanied by the prescribed power of attorney, Form 935, except that an agent holding a valid and subsisting general power of attorney authorizing him to represent his principal in making, executing, and filing the income return, may submit a certified copy thereof in lieu of the authorization on Form 935. The taxpayer and his *254 agent, if any, are responsible for the return as made and incur liability for the penalties provided for erroneous, false, or fraudulent returns. * * *
"(b) Taxable years beginning after December 31, 1943, and prior to January 1, 1948. - (1) General. - For taxable years beginning after December 31, 1943, and prior to January 1, 1948, the return shall be on Form 1040, except in the case of a taxpayer entitled to elect, and who so elects, to use the Form W-2 (Rev.) in accordance with the rules prescribed in subsection (b)(2) of this section. A taxpayer, even though entitled to use Form W-2 (Rev.) for the taxable year may, nevertheless, use Form 1040 as his return. Such taxpayer otherwise entitled to use Form W-2 (Rev.) as his return for the taxable year but who doesn't desire to take the standard deduction provided in section 23(aa) is required to use Form 1940 as his return for such taxable year. Use of the short Form 1040A is discontinued with respect to taxable years beginning after December 31, 1943, and prior to January 1, 1948. The provisions of subsection (a) of this section insofar as they apply to the time and manner of making a return on Form 1040 are equally applicable *255 to taxable years beginning after December 31, 1943, and prior to January 1, 1948." Petitioner does not claim that he signed the returns in question himself. The upshot of his testimony is that the returns for 1943, 1945, and 1947 were prepared by his accountant and that when they were ready for his signature he was notified and he authorized his wife to sign them for him and she did so. This testimony was corroborated by his wife who testified at the hearing. Petitioner was not sick so as to cause him to be unable to sign the returns nor was he absent from the United States so as to prevent his signing the returns. He had executed no power of attorney authorizing his wife to sign for him. Under these facts, we do not think that the returns filed for 1943, 1945, and 1947 were proper returns within the meaning of section 291(a) and the regulations quoted above. Cf. Plunkett v. Commissioner, (C.A. 1, 1941) 118 Fed. (2d) 644, affirming Theodore R. Plunkett, 41 B.T.A. 700. In the Plunkett case, the original return which was filed contained a statement of the taxpayer's income and deductions but the return was not signed. The Court held that the return, not being *256 signed by the taxpayer, should be considered no return at all. It is true that in the instant case the three returns which are in question were signed but they were not signed by the petitioner but were signed by his wife who had no power of attorney authorizing her to sign for him. Under these circumstances we think these original returns for 1943, 1945, and 1947 were not signed returns and, therefore, fall within the ambit of the Plunkett case, supra. It is true that petitioner in 1949 filed amended returns for all three of these years in which the Commissioner has imposed delinquency penalties and petitioner signed these amended returns himself. But if the original returns which were filed were not proper returns under the applicable statute and regulations, then the filing of late returns does not avoid the delinquency penalty, no reasonable cause having been shown for the failure to file proper returns in the first place. See Plunkett v. Commissioner, supra.
Issue No. 4. Penalties for Underestimation of Tax The Commissioner in his determination of the deficiencies for 1945, 1946, and 1947 has imposed penalties for substantial underestimation of the tax under *257 section 294(d)(2) in the respective amounts of $1,277.46, $1,190.80 and $137. Section 294(d)(2) of the 1939 Code under which the Commissioner has imposed penalties against petitioner for understimation of the tax for 1945, 1946, and 1947 reads as follows: "SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. * * *
"(d) Estimated Tax. - * * *
"(2) Substantial underestimate of estimated tax. - If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35), in the case of individuals other than farmers exercising an election under section 60(a), or 66 2/3 per centum of such tax so determined in the case of such farmers, exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. * * *" Petitioner in his brief does not argue about these penalties which the Commissioner has imposed for underestimation of tax in 1945, 1946, and 1947. At any rate it appears from the amounts of net income which the petitioner concedes he had for 1945, 1946, and 1947 *258 that penalties for underestimation of tax for those years are due under section 294(d)(2). As to this issue we sustain the Commissioner. In our Findings of Fact is shown the amount of estimated tax as filed by petitioner and the amount of tax paid by petitioner. The penalties for underestimation of the tax will, of course, be recomputed in accordance with our decision herein as to petitioner's net income. It is clear that the penalties for underestimation of the tax for 1945 and 1946 will be considerably less than those imposed by the Commissioner in his deficiency notice. That is because petitioner's net income for 1945 and 1946 under our decision herein is considerably less than that determined by the Commissioner for those years in his deficiency notice. Decision will be entered under Rule 50. Footnotes
*. Income and Victory Tax.↩